### IN THE UNITED STATES DISTRICT COURT FOR THE
### NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| JOE RICHARD BLISSIT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 09-CV-58-TCK-FHM |
| | ) | |
| WESTLAKE HARDWARE, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

Before the Court is Defendant Westlake Hardware, Inc.'s Motion for Summary Judgment (Doc. 39).

**I.  Factual Background**

On February 14, 2008, Plaintiff Joe Richard Blissit ("Plaintiff") fell in a store owned by Defendant Westlake Hardware, Inc. ("Defendant"). The circumstances surrounding the fall are disputed. Generally, Plaintiff contends that a gust of wind blew up a floor mat inside the store, causing him to trip and fall. Defendant contends that Plaintiff tripped over the floor mat. Although the precise wind velocity is disputed, the parties agree that it was a windy day. Plaintiff alleges three causes of action against Defendant: (1) negligence, (2) premises liability, and (3) battery.[1] Defendant moved for summary judgment on all three claims.[2]

---

[1]  Former Plaintiff Lynne Joyce Blissit asserted a claim for loss of consortium. On October 9, 2009, the Court dismissed all claims asserted by Lynn Blissit without prejudice and terminated her as a party to the litigation.

[2]  Defendant also moved for summary judgment on the loss of consortium claim. However, such claim has been dismissed by the Court without prejudice.

## II.   Summary Judgment Standard

Summary judgment is proper only if "there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of showing that no genuine issue of material fact exists. *See Zamora v. Elite Logistics, Inc.*, 449 F.3d 1106, 1112 (10th Cir. 2006) (citation omitted). The Court resolves all factual disputes and draws all reasonable inferences in favor of the non-moving party. *Id.* (citation omitted). However, the party seeking to overcome a motion for summary judgment may not "rest on mere allegations" in its complaint but must "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The party seeking to overcome a motion for summary judgment must also make a showing sufficient to establish the existence of those elements essential to that party's case. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323-33 (1986).

## III.   Negligence/Premises Liability

### A.   General Law

Under Oklahoma law, the elements of negligence are: "(1) the existence of a duty on the part of the defendant to protect plaintiff from injury; (2) a violation of that duty; and (3) injury proximately resulting therefrom." *Copeland v. Tela Corp.*, 996 P.2d 931, 933 (Okla. 1999) (internal quotations omitted). "Premises liability" is a term used by the Oklahoma Supreme Court to describe liability sounding in negligence for injuries sustained on real property owned or operated by the defendant. *See Pickens v. Tulsa Metro. Ministry*, 951 P.2d 1079, 1082-83 (Okla. 1997). In a premises liability negligence action, the extent of the duty owed depends on the entrant's status – namely, whether the entrant is a trespasser, licensee, or invitee to the property. *Id.* at 1083

(explaining that Oklahoma adheres to the common-law's "trichotomous classification system" for purposes of determining the precise duty of care owed by property owner to entrant).

In this case, there is no dispute that Plaintiff was an invitee into Defendant's store. Therefore, Defendant owed Plaintiff the "highest duty" owed to property entrants. *Id.* Specifically, Defendant owed Plaintiff: "(1) the duty to exercise reasonable care to disclose to him the existence of dangerous defects known to the owner, but unlikely to be discovered by the licensee, . . . [extending to] conditions and instrumentalities which are in the nature of hidden dangers, traps, snares, and the like"; and (2) "the additional duty of exercising reasonable care to keep the premises in a reasonably safe condition for the reception of the visitor." *Id.* at 1083-84; *see also Rogers v. Hennessee*, 602 P.2d 1033, 1034 (Okla. 1979) ("The law casts on the invitor the duty to exercise reasonable care to keep the premises in a reasonably safe condition and to warn invitees of conditions which are in the nature of hidden dangers, traps, snares, pitfalls and the like. All normal or ordinary risks incident to the use of the premises are assumed by the invitee."). The Oklahoma Supreme Court further explained the duty owed to invitees as follows:

> [T]he law does not require that the landowner protect the invitee against dangers which are so apparent and readily observable that one would reasonably expect them to be discovered. . . . A hidden danger within this rule of liability need not be totally or partially obscured from vision or withdrawn from sight; the phrase is used to describe a condition presenting a deceptively innocent appearance of safety 'which cloaks a reality of danger'.

*Id.*; *see also Rogers,* 602 P.2d at 1034 ("What constitutes a hidden danger depends on the physical surroundings and on the peculiar use made of them at the time of the injury."). Further, "[a]n invitor cannot be held responsible unless it be shown that he/she had notice or could be charged with gaining knowledge of the condition in time sufficient to effect its removal or to give warning of its presence." *Rogers*, 602 P.2d at 1035.

### B.       Defendant's Arguments in Support of Summary Judgment

Defendant argues that it is entitled to summary judgment on Plaintiff's negligence claim because the undisputed facts show that: "(1) Defendant did not breach any duty owed to Plaintiff . . . because Defendant did not have notice of the alleged dangerous condition, (2) Defendant exercised reasonable care to prevent injuries to its customers including Plaintiff, and (3) Defendant did not have a duty to remedy or warn Plaintiff about an alleged dangerous condition unknown to Defendant, particularly where Plaintiff claims superior knowledge of the alleged dangerous condition." (Def.'s Mot. for Summ. J. 1.)  The first and third arguments overlap and will be addressed together.

#### 1.       *Defendant's Lack of Notice of Alleged Dangerous Condition*

Store manager Bransen Bloskovich ("Bloskovich") was present on the day of Plaintiff's fall. Bloskovich admitted in his deposition that he saw the wind have some effect on the floor mat prior to Plaintiff's entry.  Specifically, Bloskovich observed "the wind roll the mat up" on one occasion. (Bloskovich Dep., Ex. C. to Pl.'s Resp. to Def.'s Mot. for Summ. J., at 47:12-25; 49:5-7.)  At the time of this observation by Bloskovich, the mat was located "[v]ery close to the door." (*Id.* at 48:4.) After observing the wind roll the mat up, Bloskovich "moved the mat further in to prevent anybody from tripping over it."  (*Id.* at 50:11-15.)  In so doing, Bloskovich  was "react[ing]" to what he perceived to be a "safety hazard." (*Id.*)  As his attempt to remedy the hazard, Bloskovich moved the mat "approximately 10 to 15" feet inside the store.

In an attempt to overcome these admissions and prevail upon summary judgment, Defendant attempts to characterize the alleged danger as the *relocated* mat being blown by the wind. (Def.'s Mot. for Summ. J. 10 (arguing that Bloskovich had "no notice of the alleged risk of a mat blowing

up *where it had been relocated.*" (emphasis added); *id.* 11 ("[T]here is no competent evidence to show that [Bloskovich] knew or should have known that the mat would blow up *in its new location.*") (emphasis added).) However, the Court finds no basis in fact or law to define the alleged condition creating the risk in the constrained, narrow manner proposed by Defendant. The facts, viewed in the light most favorable to Plaintiff, could support a finding that Defendant had notice of a risk – namely, wind blowing up the floor mat – that caused Plaintiff's fall. *See Brown v. Alliance Real Estate Group*, 976 P.2d 1043, 1045 (Okla. 1999) ("The court should not grant summary judgment where reasonable minds could draw different inferences or conclusions from the facts. Here, one might easily infer that the property owner had sufficient notice of the hazardous condition to create a duty to warn invitees of the unseen danger.") (citation omitted).

Defendant also argues that, because Plaintiff admitted during his deposition that he was aware of high wind speeds, the relevant danger was "open and obvious" such that Defendant had no duty to warn Plaintiff against it. This argument is equally unpersuasive. A jury could conclude that the "hidden" component of the danger in this case was the wind's potential effect on the mat, which was known to Bloskovich but not to Plaintiff. This is therefore not a case where a plaintiff "had as much knowledge" as the defendant regarding the dangerous condition in the store. *Cf. Hatcher v. Super C Mart*, 24 P.3d 377, 381 (Okla. Civ. App. 2001) (affirming grant of summary judgment where "it was undisputed by [the plaintiff] that she had as much knowledge of the wet floor as the Store or could have discovered the condition in the exercise of reasonable care" and concluding that there was "no duty on the part of the Store to warn or otherwise protect [the plaintiff] from falling"). Unlike the plaintiff in *Hatcher*, Plaintiff did not have "as much knowledge"

of the dangerous condition because, although he was aware of the wind gusts, he had not seen the wind's effect on the floor mat.

### 2. *Defendant's Exercise of Reasonable Care*

Defendant also contends that the undisputed evidence "shows that [Bloskovich] in fact exercised reasonable care to prevent injury to store customers by moving the mat ten (10) to fifteen (15) feet away from the door." (Def.'s Mot. for Summ. J. 11.) Defendant argues that, because the mat had not rolled up again after Bloskovich relocated it (including when Plaintiff entered the store), "the potential risk was remedied, and therefore, Defendant had no duty to act further or warn of such unknown risk." (*Id.*) Plaintiff contends that the exercise of reasonable care required something more than moving the mat ten to fifteen feet inside the door, *e.g.*, removing the mat from the premises until the wind subsided. (*See* Pl.'s Resp. to Def.'s Mot. for Summ. J. 13 ("[B]loskovich observed the danger posed to [Plaintiff] only minutes before it injured [Plaintiff] and understood the risk it posed. He did nothing to remove the hazard. Instead, he merely relocated it a few feet away.").)

The Court cannot conclude that Bloskovich's relocation of the mat constitutes "reasonable care" as a matter of law. Instead, reasonable minds could differ as to whether Bloskovich's actions constitute "reasonable care" under the circumstances presented, and the question is one for the jury. *See Goodwin v. Enserch Corp.*, 949 F.2d 1098, 1104 (10th Cir. 1991) (reversing grant of judgment notwithstanding the verdict where pipeline company was aware of leaks in a transmission pipeline, used clamps to close off the leaks, but the clamps were "homemade" and used possibly fifteen years earlier) ("It is a question of fact for the jury . . . as to whether the dangerous condition existed long enough so that in the exercise of ordinary care a reasonable person exercising reasonable care would

have discovered and remedied the same."). Further, courts have found triable issues of fact in circumstances where a property owner took some measures to abate the hazard but the plaintiff contended that such measures were insufficient. *See Ingram v. Wal-Mart Stores, Inc.*, 932 P.2d 1128, 1130 (Okla. 1997) (reversing grant of summary judgment in favor of store where customer slipped on toothpicks because "[r]easonable persons could differ as to whether Wal-Mart knew or should have known of a dangerous condition, or whether the aisles were checked often enough by Wal-Mart employees"); *Fleming v. Allied Supermarkets, Inc.*, 236 F. Supp. 306, 309 (W.D. Okla. 1964) (stating general rule that whether store owner exercised reasonable care is question of fact) (after bench trial, finding that grocery store employee that observed child pushing grocery cart through store aisles and merely told child to "slow down" failed to exercise reasonable care);

The case principally relied upon by Defendant, *Rogers v. Hennessee*, 602 P.2d 1033, 1036 (Okla. 1979), is distinguishable. *Rogers* involved a beauty school student who slipped and fell in a puddle of water while walking from her work station to a supply pantry. The Oklahoma Supreme Court affirmed the trial court's sustaining of the owner's demurrer to the student's evidence. The court reasoned that the owner had no notice that the water had puddled on the floor and that the owner exercised reasonable care by periodically inspecting the work stations to check for puddles. Under these circumstances, there was no "evidence tending to show that at the critical time and place the [o]wner had knowledge, actual or constructive, of the offending defect or was negligent in failing to discover it." *Id.* at 1036. Defendant contends that "[l]ike the defendant in *Rogers*, Defendant periodically removed dangers as they were discovered." (Def.'s Mot. for Summ. J. 11-12.) However, the critical distinguishing fact is Bloskovich's admissions that he (1) saw the mat roll up after being blown by the wind on the day of the accident, (2) viewed the mat as a safety risk, and (3)

made some effort to abate the risk. *Rogers* certainly did not involve a plaintiff who fell in a puddle that the defendant had previously discovered and attempted to mop, which would be more analogous to the facts presented here.

**IV.     Battery**

"Under Oklahoma law, in order to establish a claim of battery, a plaintiff must prove that: 1) a defendant, without consent, acted either *with the intent of making a harmful or offensive contact* with the plaintiff or with the intent of putting the plaintiff in apprehension of such a contact; and 2) the defendant's act resulted in a harmful or offensive contact with the plaintiff." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1219 (10th Cir. 2003) (emphasis added). Plaintiff argues that the "floor mat was an instrumentality within the control of the defendant which battered [Plaintiff] to which [Plaintiff] did not consent." (Pl.'s Resp. to Def.'s Mot. for Summ. J. 16.)

Plaintiff's battery claim fails as a matter of law because he has presented no evidence tending to show that Defendant intentionally injured him, intentionally allowed the wind to roll up the floor mat, or took any other intentional actions that led to his injuries. Plaintiff's cited cases are either distinguishable, *see Keel v. Hainline*, 331 P.2d 397 (Okla. 1958) (evidence supported liability for battery where student intentionally threw wooden eraser that resulted in injury, although student did not intend the injurious result), or arise in the unique context of "medical batteries" for non-consensual actions taken by surgeons, *see, e.g., White v. Hirshfield*, 236 P 406 (Okla. 1925) (medical battery occurred based on non-consensual removal of fallopian tubes during caesarean section). Such cases do not support Plaintiff's theory that Defendant somehow made an intentional, harmful contact with Plaintiff.

**V.     Conclusion**

Defendant Westlake Hardware, Inc.'s Motion for Summary Judgment (Doc. 39) is DENIED in part and GRANTED in part as set forth herein.

**IT IS SO ORDERED this 18th day of March, 2010.**

_____
**TERENCE KERN**
**United States District Judge**